UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

FAINA RASIN,

        *Plaintiff*,

     -*against*-

COMMISSIONER OF SOCIAL SECURITY;

        *Defendant*.

----------------------------------X

**MEMORANDUM & ORDER**

18-cv-06605(KAM) (LB)

**KIYO A. MATSUMOTO, United States District Judge:**

     Pursuant to 42 U.S.C. § 405(g), Faina Rasin ("plaintiff") appeals the final decision of the Commissioner of Social Security ("defendant"), which held that plaintiff was not disabled within the meaning of the Social Security Act ("the Act") and, therefore, was not eligible for disability insurance benefits under Title II of the Act. Plaintiff alleges she is disabled under the Act and is thus entitled to receive the aforementioned benefits.

     Before the court is plaintiff's motion for judgment on the pleadings (ECF No. 11) and defendant's cross-motion for judgment on the pleadings (ECF No. 13). For the reasons set forth below, plaintiff's motion is granted, defendant's motion is denied, and the case is remanded for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

**a. Procedural History**

On February 27, 2015, plaintiff Faina Rasin filed an application for disability insurance benefits. (ECF No. 14, Administrative Transcript ("Tr.") at 14, 223-226.)[1] The date of alleged onset of plaintiff's disability is September 13, 2014. (Tr. 14, 74.) Plaintiff alleged disability as a result of her generalized anxiety disorder, panic disorder, major depressive disorder and mild cognitive disorder. (*Id.*)

On May 29, 2015, the Social Security Administration ("SSA") denied plaintiff's application stating that she was not disabled within the meaning of the Act, and therefore, was not entitled to benefits. (Tr. 73, 74-85.) On July 7, 2015, plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 14, 129-30.) On July 26, 2017, ALJ Rosanne M. Dummer presided over the plaintiff's hearing from the National Hearing Center in Alexandria, Virginia. (Tr. 14, 40.) Plaintiff appeared, along with her attorney, Charles Weiser, Esq., and testified via videoconference from the National Hearing Office in New York, New York. (Tr. 14, 38-64, 184.) Ray O. Burger, an impartial

---

[1] The Certified Administrative Record, is available at ECF No. 14, ECF pp. 1-860. "Tr." refers to the correspondingly numbered page in the record.

vocational expert, also provided testimony by phone.  (Tr. 14,
59-63.)  By a decision dated November 21, 2017, ALJ Dummer
concluded that plaintiff was not disabled.  (Tr. 89-104.)
However, plaintiff's representative had submitted a response to
proffer[2] on November 16, 2017.  (Tr. 14, 308-10, 311-12.)
Because the ALJ had not considered the response to proffer or
plaintiff's request for a supplemental hearing, the ALJ vacated
her decision on the same day.  (Tr. 14-15, 314.)  The ALJ
reopened the case to consider the additional documentation
"under the rules of administrative finality." (*Id.; see also*
Hearings, Appeals and Litigation Law Manual ("HALLEX") I-2-9-
10.)[3]  Plaintiff was provided a Notice of Revised Decision.  (Tr.
14, 313-14.)

On January 9, 2018, the ALJ conducted a supplemental
hearing from Alexandria, Virginia.  (*Id.* at 15, 65-72.)
Plaintiff appeared via telephone, along with her representative,
Harold Skovronsky, Esq., from his office in New York, New York.
(Tr. 14, 37.)  Vocational expert Cyndee Burnett was present by

---

[2] Pursuant to HALLEX I-2-7-1 (A), in the context of evidence development, to
"proffer" means to provide an opportunity for a claimant (and appointed
representative, if any) to review additional evidence that has not previously
been seen and that an adjudicator proposes to make part of the record.
Proffering evidence allows a claimant to: comment on, object to, or refute
the evidence by submitting other evidence; or, if required for a full and
true disclosure of the facts, cross-examine the author(s) of the evidence.
[3] The revised decision includes a summary of both new and material evidence,
and the arguments and testimony provided by plaintiff and her representative
at the supplemental hearing. The changes in the November 21, 2017 Decision
are incorporated in italics in the revised decision.

videoconference telephone, but was not called upon to testify. (Tr. 14, 67.)  The ALJ agreed to plaintiff's request to amend to a closed period of disability from the alleged onset date of September 13, 2014, to 2016.  (Tr. 14, 70.)  On January 18, 2018, the ALJ issued a revised decision finding that plaintiff was not disabled within the meaning of the Act and was thereby not entitled to benefits.  (Tr. 31.)

On March 8, 2018, plaintiff appealed the ALJ's decision to the Appeals Council.  (Tr. 220-22.)  On October 18, 2018, the Appeals Council denied review of the ALJ's decision, rendering the ALJ's decision the final decision in the case. (Tr. 1; ECF No. 1, Complaint ("Compl.") at ¶ 4.)  On November 19, 2018, plaintiff filed the instant action in federal court. (*See generally* Compl.)

**b. Relevant Facts**

On November 19, 2019, the parties filed a Joint Stipulation of Relevant Facts, pursuant to Individual Motion Practice Rule IV(C)(5), which the court incorporates by reference herein.  (ECF No. 13-1, Joint Stipulation of Relevant Facts ("Stip.").)  Having incorporated the relevant facts, the court shall address only the medical opinion evidence specifically germane to the ALJ's decision.

**Medical Opinion Reports**

**a.** *Physical Functioning*

4

Medical Opinion of Treating Source Dr. Shusterman, DO

In a medical source statement, dated March 28, 2015, Dr. Arkadiy Shusterman, DO, ("Dr. Shusterman"), stated that he had been treating plaintiff since 2007[4], and listed the treating diagnoses as hypertension, joint pain, anxiety disorder, and vertigo. (Tr. 331.) He opined that plaintiff's current symptoms included shortness of breath, fatigue, joint pain, anxiety and panic attacks, and dizziness. (*Id.*) He expected plaintiff's condition to endure for life. (*Id.*) Dr. Shusterman noted that, since 2007, plaintiff displayed symptoms of shortness of breath, as well as anxiety disorder with depressive episodes. (*Id.*) Dr. Shusterman added that plaintiff has decreased range of motion of the cervical spine, and left shoulder, and tenderness. (Tr. 333.)

Dr. Shusterman opined that plaintiff's fatigue is triggered by any sort of physical activity, and usually lasts for 30-45 minutes. (*Id.*) He added that after the fatigue begins, plaintiff must rest for 30-45 minutes before resuming activity. (*Id.*) Dr. Shusterman also noted that plaintiff's

---

[4] Dr. Schusterman ordered x-rays, bloodwork, and other studies of plaintiff's medical issues. (Tr. 336, 353, 355, 426 (MRIs for left shoulder, chest); Tr. 337-39 (colonoscopy, symptoms of GERD); Tr. 344-51 (pulmonary/sleep disorder study); Tr. 595, 674 (neurologist for headaches, neck pain, muscle spasms); Tr. 604 (electromyography studies); Tr. 598 (referred to hand surgeon for carpal tunnel syndrome); Ex. 14F (bloodwork and urinalysis).)

depression was primary to her fatigue. (*Id.*)   Plaintiff was
limited physically by dyspnea and palpitations.  (Tr. 334.)

Regarding work-related physical activities, Dr.
Shusterman opined that plaintiff can occasionally lift and/or
carry 10-15 pounds for up to 1/3 of the workday, but the maximum
number of pounds she can lift or carry was 10 pounds.  (*Id.*)
Plaintiff was limited to standing or walking for up to two hours
of a day.  (*Id.*)   Moreover, Dr. Shusterman noted that plaintiff
could sit for less than six hours a day.  (*Id.*)  Dr. Shusterman
opined that plaintiff was limited to pushing and or pulling 10-
15 pounds in her upper extremities.  (*Id.*)  Plaintiff was
vocationally limited due to her anxiety and panic attacks.
(*Id.*)

On July 25, 2017, Dr. Shusterman completed a second
Medical Assessment of Ability to do Work- Related Activities
form.  (Tr. 583-85.)  Dr. Shusterman assessed plaintiff's
exertional limitations, and specifically found that plaintiff
could occasionally lift and/or carry less than 10 pounds due to
bilateral carpal tunnel syndrome and cervicalgia.  (Tr. 583.)
She could frequently lift less than 10 pounds due to lower back
pain, L4-L5 herniated disc displacing the L5 nerve root, and an
L5-S1 herniated disc.  (*Id.*)  Dr. Shusterman further opined that
plaintiff could stand and or walk for a total of about two hours
due to lower back pain.  (Tr. 584.)  She could sit for less than

two hours, and would need to alternate between sitting and standing due to lower back pain, herniated discs, and lumbar radiculopathy. (*Id.*) Plaintiff was limited in the use of her upper extremities for pushing and pulling due to carpal tunnel syndrome and cervicalgia. (*Id.*) Plaintiff also suffered from anxiety and panic disorders. (Tr. 585.) She could not stand more than 25 to 30 minutes at a time. (*Id.*)

Medical Opinion of Consultative Examiner, Dr. Gearhart, MD

On April 20, 2015, Dr. Shannon Gearhart, M.D., ("Dr. Gearhart") performed a consultative internal medicine examination on the plaintiff. (Tr. 461-70.) Dr. Gearhart noted that plaintiff had a lot of fluid around her knees and right shoulder. Dr. Gearhart diagnosed plaintiff with bilateral knee pain, shoulder pain, neck pain, hypertension, history of bladder cancer status post resection, lower back pain, vertigo, status post-surgery for glaucoma, headaches, diet controlled diabetes. (Tr. 466.)

Dr. Gearhart reported that plaintiff's gait was antalgic at first, and then normalized. (Tr. 464.) Dr. Gearhart noted plaintiff had difficulty standing on her heels, and toes and squatting, and when rising from her chair. (*Id.*) Musculoskeletal examination showed decreased range of motion in the cervical and lumbar spines, shoulders, hips and knees. (Tr. 465.) Plaintiff's strength was 4/5 to 5/5 in the upper and

lower extremities, and grip strength was 4/5 bilaterally. (*Id.*)
Plaintiff had difficulty with her zippers and buttons,
particularly with her left hand. (*Id.*) Plaintiff showed no
sensory deficits. (*Id.*) Lumbosacral x-ray showed disc space
narrowing, while the x-ray of the right knee was normal. (Tr.
466.)

Dr. Gearhart reported plaintiff's prognosis as stable.
(Tr. 466.) Dr. Gearhart opined that plaintiff has marked
restrictions for lifting, carrying, bending, crouching,
repetitive stair climbing and prolonged walking. (*Id.*) She
further found that plaintiff had moderate restrictions for
pushing, pulling, reaching and prolonged overhead work with the
left arm as well as prolonged sitting and standing. (*Id.*) Dr.
Gearhart also stated that plaintiff has marked restrictions for
activities requiring fine manipulation or repetitive movements
of both hands. (*Id.*) Dr. Gearhart cautioned plaintiff to avoid
activities that put her at risk of falling which include
unprotected heights, balance and possible triggers of her
vertigo, and warned her to avoid walking on uneven surfaces.
(*Id.*) Lastly, Dr. Gearhart opined that plaintiff had moderate
restrictions for squatting and kneeling. (*Id.*)

Medical Opinion of Medical Expert, Dr. Cruz, M.D.

On October 12, 2017, Dr. Edwin Cruz, M.D., ("Dr.
Cruz") reviewed the medical evidence on the record. (Tr. 704–

16, 746-57.)  Dr. Cruz filled out a Medical Source Statement of
Ability to Do Work-Related Activities (Physical) Questionnaire.
(Tr. 748-753.)  Dr. Cruz opined that plaintiff could lift and/or
carry up to 10 pounds, or 11-20 pounds continuously,[5] and could
carry 21-50 pounds occasionally.  (Tr. 748.)  Dr. Cruz found
that without interruption plaintiff could sit for four hours,
stand for two hours, and walk for one hour.  (Tr. 749.)  In
total for an eight-hour workday, Dr. Cruz stated that plaintiff
could sit, stand or walk for eight hours, and that she does not
require a cane to ambulate.  (*Id.*)  Dr. Cruz also found that
plaintiff could frequently reach overhead and otherwise, handle,
finger, feel, and push/pull with both her right and left hands.
(Tr. 750.)  Dr. Cruz further found that plaintiff could
continuously operate her foot controls for both her right and
left feet.  (*Id.*)

Dr. Cruz opined that plaintiff could continuously
climb stairs and ramps, balance, stoop, kneel, crouch and crawl,
but could never climb ladders or scaffolds.  (Tr. 751.)  Dr.
Cruz further found that plaintiff could tolerate operating a
motor vehicle, humidity and wetness, dust, odors, fumes and
pulmonary irritants, extreme cold or heat, vibrations and loud

---

[5] In the Questionnaire, the ability to perform an activity is qualified by the following terms: "occasionally" means one third of the time, "frequently" means one third of the time to two thirds of the time, and "continuously" means over two thirds of the time. (*See* Tr. 748.)

noise such as that of heavy traffic. (Tr. 752.) Dr. Cruz concluded that although plaintiff could frequently tolerate mechanical moving parts, she could not tolerate unprotected heights. (*Id.*)

Dr. Cruz found that plaintiff could shop, ambulate without a wheelchair, crutches or canes, and could walk at a reasonable pace on uneven or rough surfaces. (Tr. 753.) He also found that plaintiff could use standard public transportation, could walk a few steps at a reasonable pace with the use of a handrail, prepare a simple meal and feed herself, care for her personal hygiene, and sort, handle or use paper files. (*Id.*)

In response to the ALJ's interrogatories, Dr. Cruz responded that plaintiff did not meet or equal Listing Nos. 11.02 Epilepsy, 11.08 Spinal Cord Disorders, 11.14 Peripheral Neuropathy, 9.00 Endocrine Disorders – Diabetes, and 13.22 Urinary Bladder – Carcinoma. (Tr. 747.) Dr. Cruz diagnosed plaintiff with, *inter alia*, carpal tunnel syndrome and bladder nodule. (Tr. 754.) Dr. Cruz opined that plaintiff requires an ergonometric-friendly work environment. (Tr. 755.) Dr. Cruz also suggested an independent neurological evaluation because plaintiff complained of seizures, and there was no imaging evidence of cerebellar dysfunction. (Tr. 756.)

### b. *Mental Functioning*

Medical Opinion of Treating Source Dr. Yuryev-Golger, MD

On October 16, 2014, Dr. Inna Yuryev-Golger, M.D., ("Dr. Yuryev-Golger"), plaintiff's treating psychiatrist, completed a medical source statement. (Tr. 428-30.) She diagnosed plaintiff with generalized anxiety disorder, panic disorder, major depressive disorder, and mild cognitive disorder. (Tr. 428.) Dr. Yuryev-Golger concluded plaintiff was unable to tolerate stress or working with people due to emotional lability and advised plaintiff to avoid stressful situations for one month. (Tr. 429.) Plaintiff's behavioral health restrictions included: severe anxiety, depression, panic, dizziness, headaches, and memory deficits, which the doctor expected would last until the end of October 2017. (*Id.*) Dr. Yuryev-Golger stated that she could not tell when plaintiff's mental status would improve. (Tr. 430.)

On December 11, 2014, Dr. Yuryev-Golger completed a medical source statement indicating that plaintiff had severe anxiety, depression, mood swings, and emotional lability. (Tr. 448.) She opined plaintiff could not concentrate, tolerate stress, or communicate with people. (*Id.*)

On February 10, 2015, Dr. Yuryev-Golger completed a Completed Physician / Therapist Questionnaire. (Tr. 434-37.) She listed plaintiff's primary diagnoses as severe generalized anxiety disorder, and panic disorder, as well as severe major

depressive disorder, and severe bipolar II disorder.  (Tr. 434.)
Dr. Yuryev-Golger assessed plaintiff's GAF score[6] at 48, and her
highest reported GAF score at 50.  (*Id.*)  Dr. Yuryev-Golger
observed that plaintiff's speech was productive, and rapid, and
plaintiff's mood was depressed.  (*Id.*)  Further, plaintiff
reported severe anxiety, but denied having hallucinations or
delusions.  (*Id.*)  Plaintiff also complained of poor sleep and
poor appetite.  (*Id.*)  Dr. Yuryev-Golger opined that plaintiff
had poor judgment and limited insight, but her cognitive
functions were in check, since she could explain proverbs, and
perform a clock-test.  (*Id.*)

Regarding plaintiff's ability to work, Dr. Yuryev-
Golger opined that plaintiff was unable to work due to emotional
instability, which in turn affects her interactions with people,
ability to perform her duties, and makes her concentration poor.
(*Id.* at 435.)  Dr. Yuryev-Golger further opined that plaintiff's
poor energy and motivation affects her ability to work.  (*Id.*)
Dr. Yuryev-Golger stated that plaintiff is compliant with her
treatment regimen, going to her appointments, and taking her
medications and is "very upset" that she is "unable to work."

---

[6] GAF stands for Global Assessment of Functioning, and is a holistic score
graded from 1-100, and assigned by a clinician who assesses an individual's
psychological, social, and occupational functioning. As set by the Diagnostic
and Statistical Manual of Mental Disorders ("DSM"), a GAF score of 41-50 is
indicative of serious symptoms affecting social interactions and vocational
functioning.  (*See* Pl. Mem. at 4 n.2.)

(*Id.*)  Dr. Yuryev-Golger also wrote that plaintiff was currently prescribed the following psychotropic medications: Lamictal, which she had just began, Klonopin to aid with her panic attacks, and Citalopram to help with her insomnia.  (*Id.*)  Dr. Yuryev-Golger also wrote that returning to work had been discussed with the plaintiff's physical therapist, and that plaintiff is "willing to work" if "she will be able to."  (*Id.*)  Dr. Yuryev-Golger opined that plaintiff was competent to manage her own funds.  (*Id.*)

Medical Opinion of Psychological Consultative Examiner, Dr. Dolan, Psy.D

On April 20, 2015, Dr. Ashley Dolan, Psy.D, ("Dr. Dolan") performed a psychiatric evaluation on the plaintiff. (Tr. 455-59.)  Dr. Dolan opined that plaintiff is able to follow and understand simple instructions, and can perform simple tasks independently, but has mild limitations performing complex tasks independently.  (Tr. 458.)  Dr. Dolan also found that plaintiff had mild limitations maintaining a regular schedule and in her concentration and attention.  (*Id.*)

Dr. Dolan further stated that plaintiff was able to learn new tasks and make appropriate decisions.  (*Id.*)  However, Dr. Dolan found that plaintiff had mild limitations relating adequately to others and moderate limitations appropriately dealing with stress.  (*Id.*)  Dr. Dolan found that the

plaintiff's difficulties were caused by her psychiatric symptoms. (*Id.*) Dr. Dolan diagnosed plaintiff with panic disorder, and major depressive disorder. (*Id.*) Dr. Dolan also noted the medical diagnoses reported by the plaintiff which included: high blood pressure, osteoarthritis, gastroesophageal reflux disease, non-insulin-dependent diabetes, shortness of breath, vertigo, glaucoma in her left eye, and a cardiac effusion. (*Id.*)

Dr. Dolan recommended that plaintiff continue with her psychological and psychiatric treatments. (*Id.*) Dr. Dolan declared plaintiff's prognosis as fair because she was in treatment but continued to experience her symptoms. (*Id.*) Though the results of the examination were consistent with psychiatric problems, Dr. Dolan opined that they were not significant enough to interfere with the plaintiff's daily functioning. (*Id.*)

Medical Opinion of Medical Expert, Dr. Thomas, Ph.D.

On October 20, 2017, Dr. Jack Thomas, Ph.D., ("Dr. Thomas") reviewed the evidence in the record. (Tr. 717-31, 736-45.) Dr. Thomas completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) Questionnaire. (Tr. 743-745.) Dr. Thomas concluded that plaintiff had mild limitations in understanding and remembering and carrying out simple instructions. (Tr. 743.) However, Dr. Thomas opined that

plaintiff had moderate limitations in understanding, remembering and carrying out complex instructions, as well as in her ability to make judgments for complex work-related decisions. (*Id.*) Dr. Thomas further opined that plaintiff had moderate limitations in interacting appropriately with the public, supervisors, co-workers, and responding appropriately to usual work situations and to changes in a routine work setting. (*Id.*) Dr. Thomas also found that plaintiff had no further impairments regarding her ability to concentrate, persist or maintain pace and in her ability to adapt or manage herself. (*Id.*) Dr. Thomas also stated that plaintiff can manage benefits in her own best interest. (*Id.*)

Further, in response to the ALJ's interrogatories, Dr. Thomas concluded that plaintiff suffered from major depressive disorder, panic disorder, generalized anxiety disorder, and bipolar disorder. (Tr. 737.) Dr. Thomas found that plaintiff had mild limitations in understanding, remembering or applying information, and adapting or managing herself. (Tr. 738.) Dr. Thomas also opined that plaintiff had moderate limitations in interacting with others and in concentrating, persisting or maintaining pace. (*Id.*) Dr. Thomas stated that, though the exhibits seemed to support mild impairment regarding depression and anxiety, plaintiff's concentration appeared to be moderately limited, pointing to Exhibit 4F, page 9, and Exhibit 17F, page

9.  (*Id.*)  Dr. Thomas also concluded that plaintiff did not meet Listing 12.04 or 12.06 because her impairments were "largely in the mild range."  (Tr. 739.)  Dr. Thomas also held that the evidence does not establish any presence of 'paragraph C' criteria.  (*Id.*)  Dr. Thomas wrote that though plaintiff had a brief severe period, she only had "some limitations now that do not preclude her from work" functioning.  (*Id.*)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow."  42 U.S.C. §§ 405(g), 1383(c)(3). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

A district court may set aside the Commissioner's decision only if the factual findings are not supported by substantial evidence or if the decision is based on legal error. *Burgess*, 537 F.3d at 127.  "Substantial evidence is 'more than a mere scintilla," and must be relevant evidence that a reasonable mind would accept as adequate to support a conclusion.  *Halloran*

*v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)).  If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld.  42 U.S.C. § 405(g).  Inquiry into legal error "requires the court to ask whether ^the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'"  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result.  *Cage v. Coim'r*, 692 F.3d 118, 122 (2d Cir. 2012).

## DISCUSSION

### a. Five-Step Analysis for Disability Claims

To receive disability benefits, claimants must be "disabled" within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d).  A claimant is disabled under the Act when she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also Shaw v. Chater*,

221 F.3d 126, 131–32 (2d Cir. 2000)).  The impairment must be of "such severity" that the claimant is unable to do her previous work or engage in any other kind of substantial gainful work. 42 U.S.C. § 423(d)(2)(A).

"The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's condition meets the Act's definition of disability.  *See* 20 C.F.R. § 404.1520.  During this five-step process, the Commissioner must consider whether "the combined effect of any such impairment . . . would be of sufficient severity" to establish eligibility for Social Security benefits.  20 C.F.R. § 404.1523.  Further, if the Commissioner does find a combination of impairments, the combined impact of the impairments, including those that are not severe (as defined by the regulations), will be considered in the determination process.  20 C.F.R. § 416.945(a)(2).

In steps one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability." *Burgess*, 537 F.3d at 128.  In step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's RFC, age, education, and work experience, the claimant is "able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

**b. The ALJ's Disability Determination**

Using the five-step sequential process to determine whether a claimant is disabled as mandated by 20 C.F.R. § 416.971, the ALJ determined at **step one** that the plaintiff had engaged in substantial gainful activity during the relevant period.  (Tr. 17; *see* 20 C.F.R. §§ 404.1520(b) and 404.1571.) The ALJ also found, however, that there were continuous twelve-month periods during which the plaintiff did not engage in substantial gainful activity.  (Tr. 17.)  The remaining findings only address that period.  (*Id.*)

At **step two**, the ALJ found that plaintiff suffered from the following severe impairments: history of urinary bladder nodule, status-post 2012 partial cystectomy, headaches, mild degenerative disc disease, bilateral carpal tunnel syndrome, left elbow epicondylitis and partial tear, depressive disorder and anxiety disorder.  (Tr. 17.)  Plaintiff was noted

as having major depressive disorder and acute depression, panic disorder, generalized anxiety disorder, and bipolar disorder.[7] (Tr. 17.) *See* 20 C.F.R. § 404.1520(c). The ALJ also took note of plaintiff's non-severe conditions: status-post 2011 bilateral glaucoma surgery, vertigo, diet-controlled diabetes mellitus with no evidence of renal, ophthalmologic or vascular complications, hypertension, slightly elevated blood pressure, and mild pain in plaintiff's left shoulder. (Tr. 17.)

At **step three**, the ALJ considered both plaintiff's severe and non-severe physical impairments. *See* 20 C.F.R. § 404.945(a)(2). The ALJ found that plaintiff did not have a physical impairment or combination of impairments that met or medically equaled the medical severity of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17; *see* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.) The ALJ also found that plaintiff did not "demonstrate the requisite severity" to meet or equal the listed physical impairments under Listing No. 1.04, Musculoskeletal System, Disorders of the Spine because the medical record did not support evidence of an inability to ambulate effectively absent handheld assistive devices, or any motor loss, positive straight-leg raising tests,

---

[7] Plaintiff also alleged disability resulting from a seizure disorder. The ALJ determined that this was not a medically determinable impairment, since there were no annotations in the medical record regarding seizures, no EEG documents showing seizures, nor any entries documenting status epilepticus. (Tr. 17-18.)

spinal arachnoiditis, or lumbar stenosis. (Tr. 18.)  Moreover,
the ALJ found that there was no evidence of nerve root
compression, or lumbar spinal stenosis resulting in
pseudoclaudication. (*Id.*)  The ALJ further found that
plaintiff's impairments did not meet or equal the medical
severity for Listing Nos. 9.00, Endocrine Disorders-Diabetes,
11.02, Epilepsy, 11.08, Spinal Cord Disorders, 11.14, Peripheral
Neuropathy, and 13.22, Urinary Bladder Carcinoma.  (Tr. 18.)  In
making this finding, the ALJ relied only on the opinion of Dr.
Cruz, a medical expert whom she had requested to review the
medical record.  (*Id.*)

     The ALJ also found that plaintiff's mental impairments
or combination of impairments also did not meet or medically
equaled the medical severity of the listed impairments under 20
C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. § 404,
Subpart P, App'x 1.  The ALJ considered Listings 12.04,
Depressive, Bipolar and Related Disorders, and Listing 12.06,
Anxiety and Obsessive-Compulsive Disorders.[8]  (*Id.*; Tr. 18.)  The
ALJ discussed that this finding is consistent with the opinion

---

[8] To meet Listing 12.04, or 12.06, claimant must satisfy the requirements of
Paragraph A, medical criteria and either Paragraph B, functional criteria of
the listing; or alternatively, Paragraph C, 'serious and persistent'
criteria.  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing Nos. 12.04, and
12.06.  To satisfy "paragraph B" criteria, a mental impairment must result in
at least one extreme or two marked limitations of functioning in:
understanding, remembering or applying information; interacting with others;
concentrating, persisting or maintaining pace; or adapting or managing
themselves.

of Dr. Thomas, a medical expert who reviewed the medical evidence on the record, and concluded Listings 12.04, and 12.06 were not met "because [plaintiff's] impairments are largely in the mild range."[9]   (*Id.*)

The ALJ found that plaintiff has mild limitations in understanding, remembering or applying information; and adapting or managing herself, and was only moderately limited with regards to interacting with others; and concentrating, persisting or maintaining pace.[10]   (Tr. 18; *see* 20 C.F.R. 404.1520(d), 404.1525, 404.1526.)

The ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c).   (Tr. 19.)   The ALJ found that plaintiff could lift/carry fifty pounds occasionally, and twenty pounds continuously; sit eight of eight hours, four hours at a time; stand eight of eight hours, two hours at a time; and walk eight of eight hours, one hour at a time.   (*Id.*)   The ALJ further found that plaintiff could frequently reach, handle, finger, feel and push/pull, and work with moving mechanical

---

[9] Though Dr. Thomas noted that plaintiff met the paragraph A criteria for Listing 12.04, and Listing 12.06, he found that plaintiff's impairments did not meet the standard for the paragraph B criteria.   (*See* Tr. 738-39; *see also* 20 C.F.R. Part 404, Subpart P, Appendix 1, 112.00A(2)(b).)
[10] The court takes note that by Tr. 18, the ALJ stated, "In making this finding, the 'paragraph B' criteria are satisfied," which would mean that plaintiff had met either Listing 12.04, or 12.06.   The court assumes that the ALJ's statement was erroneous, and intended to say that the 'paragraph B' criteria were not met.

parts, as well as tolerate loud noise, such as that of heavy traffic. (*Id.*)

The ALJ also found that plaintiff could understand, remember and carry out instructions for routine repetitive type unskilled work; could sustain attention and concentration for two-hour periods of time in an eight-hour day. (Tr. 19-20.) The ALJ determined that plaintiff can tolerate brief and superficial contact with others, but could not handle negotiation, arbitration or complex interactions. (Tr. 20.) However, the ALJ stated that plaintiff should avoid ladders/ scaffolds and unprotected heights, and work that is fast-paced, or has high production goals/quotas. (*Id.*)

The ALJ stated that she considered all evidence on the record in coming to this RFC conclusion, and found that though plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were inconsistent with the rest of the evidence. (Tr. 23.)

In arriving at her RFC decision concerning plaintiff's physical limitations, the ALJ gave "great weight" to Dr. Cruz, non-examining medical expert who reviewed the objective record evidence. (Tr. 27.) The ALJ explained that the opinion was entitled to such weight because it was "reasonably consistent

with the overall record evidence," and Dr. Cruz is Board
Certified in Internal Medicine, and Critical Care Medicine, and
is an SSA recognized medical expert.  (*Id.; see also* Tr. 732-
35.)  However, the ALJ gave "limited weight" to the medical
opinion of consultative examiner Dr. Gearhart, asserting that
the findings of plaintiff having physical "marked limitations"
were made on the basis of a one-time assessment and not
supported by other evidence on the record.  (Tr. 25.)  The ALJ
also gave the opinion of treating source Dr. Shusterman "little
weight" on the grounds that the findings seemed to be based off
of the plaintiff's self-reports, and generally inconsistent with
the contemporaneous progress notes, and the opinions of the
medical experts, Dr. Thomas and Dr. Cruz.  (*Id.*)

        Regarding plaintiff's mental functioning, the ALJ
accorded "significant weight" to Dr. Dolan, the consultative
examiner, who found that plaintiff's panic disorder and
depression did not impede her daily functioning, because Dr.
Dolan's opinion was substantiated by the overall record.  (*Id.*)
The ALJ only gave "some weight" to Dr. Shapiro, the State agency
psychological consultant, finding his opinion uncorroborated by
the medical evidence.  (*Id.*)  ALJ Dummer also accorded "little
weight" to Dr. Yuryev-Golger's opinion, claiming it was
"inconsistent with the overall record."  (Tr. 28.)  Lastly, the
ALJ gave "great weight" to the opinion of non-examining medical

expert, Dr. Thomas, a clinical psychologist engaged in private practice, as well as a director of clinical development, and SSA recognized medical expert.  (Tr. 29; *see also id.* at 729-731.)

At **step four**, the ALJ found that plaintiff was not able to return to her past relevant work because the demands of her past jobs exceeded the plaintiff's residual functional capacity as determined by the ALJ.  (Tr. 29.)  A vocational expert ("VE") testified that plaintiff has performed past relevant work as (1) nurse supervisor, light work, (DOT No. 075.167-010; SVP 7), (2) membership solicitor, light work but medium as performed, semi-skilled, (DOT No. 293.357-022; SVP 4), and (3) home care nurse, skilled, (DOT No. 075.124-014; SVP 7). The plaintiff's current work was described as care director, sedentary, skilled work (DOT No. 075.117-022; SVP 8).  (Tr. 29.)

Lastly, at **step five**, in determining whether plaintiff could successfully adjust to other work, the ALJ considered the plaintiff's residual functional capacity, age, education and work experience.  (Tr. 29-30.)  *See* Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  The ALJ found that plaintiff was defined as an individual closely approaching advanced age, on the alleged disability onset date. (*Id.*)  The ALJ determined that the transferability of job skills is immaterial because the Medical-Vocational Rules support the finding that plaintiff is "not disabled" whether or not she has

transferrable job skills.[11]  (*Id.*)   Since the ALJ found the plaintiff was restricted by additional limitations and unable to perform the full range of medium work, the ALJ asked the VE which jobs existed in the national economy for someone of the plaintiff's RFC, age, education and work experience. (Tr. 30.)

The ALJ accepted the VE's response to interrogatories that the plaintiff was capable of performing unskilled medium work available in the national economy such as (1) kitchen helper (DOT No. 318.687-010), (2) hospital cleaner (DOT No. 323.687-010), and (3) janitor sweeper(DOT No. 381.687-018). (*Id.*)  The ALJ added that notwithstanding plaintiff's contentions that she could not perform medium level work, there are also a significant number of light level jobs available. (*Id.*)  The VE noted that unskilled light jobs that plaintiff could perform included: (4) housekeeper, cleaner (DOT No. 323.687-014), (5) stocker (DOT No. 299.667-014), (6) mail clerk (DOT No. 209.687-026), and (7) officer helper (DOT No. 239.567-010).  (*Id.*)  Based on the aforementioned factors, and the testimony of the VE, the ALJ concluded that the plaintiff was

---

[11] Pursuant to Medical-Vocational Rule 203.22, an RFC to perform the full range of medium work necessarily supports a finding of "not disabled."  *See* 20 C.F.R. § 404, Subpart P, App'x 2, 203.22.  Thus, had the ALJ found that plaintiff was able to perform the full range of medium labor, plaintiff would have been considered "not disabled" within the grid of the Medical-Vocational guidelines.  *Id.*

capable making a successful adjustment to other work that exists in significant numbers in the economy.

Thus, ALJ Dummer concluded that plaintiff was not disabled within the meaning of the Act.  (Tr. 31.)

### c. Analysis

Plaintiff contends that the ALJ erred in assigning little weight to the opinions of the treating physicians, and erred in assigning great weight to the non-examining medical experts; and that as a result, ALJ Dummer's RFC determination is not supported by substantial evidence in the record.  (ECF No. 11, Plaintiff's Memorandum of Law ("Pl. Mem.") at 10.)  The Commissioner argues that the ALJ correctly weighed the medical opinion testimony and her RFC determination is supported by substantial evidence.  (ECF No. 13, Defendant's Memorandum of Law in Opposition ("Def. Opp. Mem.") at 5.)

The court finds that the ALJ erred in not following the treating physician rule, and by failing to comprehensively set forth a rationale for the weight assigned to plaintiff's treating psychiatrist and treating primary care physician ("PCP").  In addition, the court finds the ALJ's RFC finding was not supported by substantial evidence.  In concluding that the plaintiff could perform a medium exertional level of work, the ALJ unjustifiably relied, to a large extent, on the medical opinion of Dr. Cruz, a non-examining medical expert who reviewed

27

the record, and did not duly consider the rest of the objective medical evidence of record as well as the corroborating medical opinions of Dr. Shusterman, plaintiff's PCP, and Dr. Gearhart, the consultative physical examiner.  Thus, the court finds the ALJ committed legal error in her decision and orders a remand for further findings on these grounds.

1. ***The ALJ Erred in Weighing the Treating Physicians' Opinions.***

Under the treating physician rule, a "treating source's opinion on the issue of the nature and severity of a [claimant's] impairment(s) will be given 'controlling weight' if the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)); 20 C.F.R. §§ 404.1527(c)(2).[12]  *See Molina v. Colvin*, No. 13-CV-4701, 2014 WL 3925303, at *2 (S.D.N.Y. Aug. 7, 2014) (finding the opinion of a treating physician "need not be given controlling weight where [it is] contradicted by other substantial evidence in the record.").

---

[12] Because plaintiff's application for disability and disability insurance benefits was filed before March 27, 2017, the recent changes reflected in C.F.R. § 404.1520c do not apply, and under C.F.R. § 404.1527(a)(2)(c), the treating source's opinion is generally assigned added or possibly controlling weight.

An ALJ who does not accord controlling weight to the treating physician's medical opinion must consider various factors to determine how much weight to give to the opinion, including: "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the amount of medical evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; and (iv) whether the opinion is from a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d. Cir. 2019) (quoting *Burgess*, 537 F.3d at 128); *see* 20 C.F.R. § 404.1527(c)(2); *see also Adukpo v. Berryhill,* 19-cv-2709 (BMC) 2020 WL 3410333, at *1 (E.D.N.Y. Jun. 22, 2020).

"The ALJ must then 'comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.'" *Cichocki v. Astrue*, 534 F. Appx. 71, 74 (2d Cir. 2013) (quoting *Burgess*, 537 F.3d at 129).  The regulations also require that the ALJ set forth "good reasons" for not crediting the opinion of the treating provider. *Cervini v. Saul,* 17-CV-2128 (JMA) 2020 WL 2615929 at *5 (E.D.N.Y. May 21, 2020) (citing *Schaal*, 134 F.3d 496, 503 (2d Cir. 1998)).  Good reasons "reflect in substance the factors as set forth in [Section] 404.1527(d)(2), even though the ALJ declines to examine the factors with explicit reference to the regulation." *Abate v. Comm'r,* 18-CV-2040 (JS), 2020 WL 2113322, at *4 (E.D.N.Y. May 4,

2020); *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)
("We require no such slavish recitation of each and every factor
where the ALJ's reasoning and adherence to the regulation are
clear."). Further, "[t]he failure to provide 'good reasons for
not crediting the opinion of a claimant's treating physician is
a ground for remand.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*,
537 F.3d at 129-30).

    i. **Dr. Shusterman, Treating Physician**

       In discussing the weight assigned to Dr. Shusterman's
opinion, ALJ Dummer stated as follows:

> The undersigned affords the opinions of Dr. Shusterman
> **little weight**. The findings appear to be based on the
> claimant's self-reports. While the claimant was
> "limited" because of anxiety and panic attacks and
> stated depression was "primary" to fatigue, the medical
> expert Dr. Thomas, Ph.D., did not find this opinion
> supported by the record. Dr. Thomas noted that the
> claimant functioned with medication and weekly
> counseling (Ex. 22F/6). Physically, the claimant saw Dr.
> Shusterman for routine primary care for chronic
> conditions and acute care as necessary (Ex. 13F/14F).
> Progress notes do not substantiate work-precluding
> functional limitations (i.e., fatigue with "any type of
> physical activity over 30-45"). Regarding the claimant's
> shoulder impairment, a neurologist treated her with left
> shoulder steroid injection and she could follow up as
> needed (Ex. 16F/18), inconsistent with disabling
> limitations. On consultative physical examination, she
> had 4/5 to 5/5 strength in the upper and lower
> extremities. Grip strength was 4/5 bilaterally with
> intact and finger dexterity (Ex. 5F). EMG showed severe
> bilateral carpal tunnel syndrome (Ex. 16F/8,9), treated
> with median nerve block injections and wrist splints.
> The claimant reported "good relief" following a wrist
> injection (Ex. 17F/2). The overall record evidence is

consistent with a range of medium level work, as per the
medical expert Dr. Cruz (Ex. 23F).[13]

For the reasons set forth below, the court finds that
the ALJ erred in her failure to assign controlling weight to Dr.
Shusterman's opinion, or failing that, to provide "good reasons"
for the weight assigned to the opinion.  Though the ALJ
acknowledged that Dr. Shusterman was the treating physician,
(Tr. 21, 25), she did not consider most of the *Burgess* factors,
such as the length, frequency, nature or extent of Dr.
Shusterman's relationship with the plaintiff.  (Tr. 25.)[14]

To the extent that the Commissioner asserts that Dr.
Shusterman's opinions were properly given "little weight"
because they were based on plaintiff's self-reported
limitations, the court does not agree.  (Def. Opp. Mem. at 6;
Tr. 25.)[15]  The ALJ did not explain why she concluded that Dr.
Shusterman's opinion was based on plaintiff's own subjective
complaints.  *Furstenau v. Saul,* No. 6:19-cv-03201- NKL 2020 WL

---

[13] Tr. 25 (emphasis added).
[14] Though the ALJ discussed the record, and plaintiff's primary care at the
hands of Dr. Shusterman in extensive detail, Tr. 20-24, the ALJ did not
specifically mention the factors such as frequency, length, extent and nature
of treating relationship in relation to her determination of the weight to
assign to Dr. Shusterman's opinion, which constitutes error, and necessitates
a remand.
[15] *See* Def. Opp. Mem. at 6 (citing *Lewis v. Colvin*, 548 F. App'x 675, 678 (2d
Cir. 2013) (affirming findings that a treating physician's opinion was not
entitled to controlling weight because it was based on the claimant's
subjective complaints); *Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012)
(affirming ALJ's decision to give less weight to a doctor's opinion because
it was based largely upon the subjective statements of the claimant, whom the
ALJ reasonably found to be less than fully credible)).

3287947, at *5 (W.D. Mo. Jun. 18, 2020) (finding the ALJ improperly denied controlling weight to a treating physician's opinion where the ALJ did not explain how the opinion was largely based on claimant's subjective complaints). Additionally, even if Dr. Shusterman had relied on plaintiff's subjective statements, "[a] patient's report of complaints, or history, is an essential diagnostic tool." *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) ("The fact that Dr. Helfand also relied on Green-Younger's subjective complaints hardly undermines his opinion as to her functional limitations."); *see also McCarty v. Astrue*, No. 5:05-CV-953, 2008 WL 3884357, at *6 (N.D.N.Y. Aug. 18, 2008) ("[The] reliance on Plaintiff's subjective complaints is not a valid basis for rejecting his opinion."); 20 C.F.R. § 404.945(a)(3).[16]

Furthermore, though the ALJ claimed that Dr. Shusterman's opinion was entitled to less weight because it is inconsistent with the record, the ALJ failed to discuss the portions of the record that supported Dr. Shusterman's opinions. "While the ALJ is not required to explicitly mention each of the factors or every shred of evidence in the record, the failure to consider the record as a whole, or provide 'good reasons' for

---

[16] Regarding the RFC evaluation, the regulations state as follows: "We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons." 20 C.F.R. § 404.945(a)(3).

according lesser weight constitutes error." *Destina v.
Berryhill,* No. 2:17-cv-02382 (ADS) 2018 WL 4964103, at *7
(E.D.N.Y. Oct. 15, 2018).  Upon an independent review of the
record, the court finds that the ALJ erred in assigning little
weight to Dr. Shusterman's opinions, because it is not evident
from the ALJ's decision that the ALJ duly considered the entire
record.

The ALJ stated that Dr. Shusterman's "[p]rogress
notes do not substantiate work-precluding functional
limitations," (Tr. 25), despite the fact that Dr.
Shusterman opined that plaintiff could only occasionally
lift or carry 10-15 pounds for up to 1/3 of the workday,
and the maximum number of pounds that plaintiff could lift
or carry was 10 pounds.  (Tr. 334.)  Further, Dr.
Shusterman's treatment notes regularly state that plaintiff
reported shoulder pain and evidenced her carpal tunnel
syndrome issues as well.  (Tr. 600-03, 606.)  Moreover,
objective medical evidence in the record, including two
MRIs, revealed plaintiff's continued issues with her
rotator cuff, tendinitis and "mild bursitis."  (Tr. 353,
355.)  Other objective testing in the record demonstrated
bilateral median nerve compression at plaintiff's elbows
indicating bilateral carpal tunnel syndrome, moderate to
severe ulnar neuropathy at the left elbow, mild ulnar

neuropathy at the right elbow, and chronic C6 radiculopathy bilaterally. (Tr. 287 (plaintiff's ultrasound showing same), 479.)

In finding that Dr. Shusterman's opinions were inconsistent with his progress notes, the ALJ appears to have relied on medical records that "record, diagnose, and address symptoms" rather than records that "assess functional abilities." *Abate,* 2020 WL 2113322, at *5 (quoting *Newson v. Comm'r of Soc. Sec.*, No. 17-CV-2718, 2019 WL 6173400, at *2 (E.D.N.Y. Nov. 20, 2019). Therefore, it is not clear that Dr. Shusterman's treatment notes and opinions are in fact inconsistent.

Plaintiff's limited lifting/carrying ability is further corroborated by treatment records dated January 11, 2017 from orthopedic specialist, Dr. Patel, who noted that plaintiff suffered from "severe" pain in her left elbow, numbness in the 4th and 5th fingers of both hands, neck pain, and opined that plaintiff "cannot even lift light objects" and the "[p]ain is sharp [and] getting worse." (Tr. 655.) *See Rolon v. Comm'r of Soc. Sec.*, 994 F.Supp.2d 496, 508 (S.D.N.Y. 2014) ("An ALJ should 'generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a

specialist.'") (citing 20 C.F.R. §§ 404.1527(c)(5),
416.927(c)(5)).

Additionally, Dr. Leybel, plaintiff's neurologist,
detailed in his progress reports plaintiff's continued severe
shoulder pain, as well as her issues with her carpal tunnel
syndrome. (Tr. 674-75.) Though the ALJ claimed that plaintiff
admitted "good relief" from the steroid injections in her wrist,
Dr. Leybel noted that even with repeated injections, plaintiff
suffers from residual numbness and pain. (Tr. 677.)
Additionally, plaintiff continued to suffer from carpal tunnel
syndrome, along with symptoms of "pain and numbness" has
returned in the past, even post-treatment. (Tr. 683.)

Furthermore, Dr. Gearhart, the consultative examiner
also found that plaintiff suffered from "marked limitations" for
"lifting, carrying, bending, . . . prolonged walking" and
activities that require "fine manipulation" and "repetitive
movements." (Tr. 466.) The ALJ gave "limited weight" to Dr.
Gearhart's opinion, asserting that "the record does not support
that the claimant is so seriously limited," and it was based on
a "one-time evaluation." (*Id.*) Yet, in concluding that
plaintiff could work a job of medium exertional level, the ALJ
referenced some of Dr. Gearhart's other findings that plaintiff
had good upper body strength, and bilateral grip strength to
support her conclusion. (Tr. 25; *see* Tr. 460-70.)

The court thus finds that the ALJ cherry-picked parts of Dr. Gearhart's medical opinion that supported her conclusion, while ignoring the portions of the opinion that did not further corroborate her findings. *See Artinian v. Berryhill*, No. 16-cv-4404, 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018) ("Federal courts reviewing administrative social security decisions decry 'cherry picking' of relevan[t] evidence, which may be defined as inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source.") (collecting cases). The court is cognizant that an ALJ may "only credit portions of a medical source opinion, or weigh different parts of the opinion differently," however, the ALJ must always "provid[e] sound reasons for the discrepancy." *Destina,* 2018 WL 4964103, at *7. Here, the ALJ did not provide any reasons at all for the selective cherry-picking of Dr. Gearhart's opinion. *See Clarke v. Colvin*, No. 15-cv-354, 2017 WL 1215362, at *9 (S.D.N.Y. Apr. 3, 2017) (quoting *Rodriguez v. Astrue*, No. 07-cv-534, 2009 WL 637154, at *25 (S.D.N.Y. Mar. 9, 2009) (An "ALJ may not 'pick and choose evidence which favors a finding that the claimant is not disabled.' ").

The ALJ also erred in assigning "great weight" to Dr. Cruz, non-examining medical expert who merely gave his opinion upon an objective review of the record. (Pl. Mem. at 14.) The general rule of the Second Circuit has been that the opinion of

"a non-examining medical expert who has not personally examined a claimant is afforded little weight." *Destina,* 2018 WL 4964103, at *7 (citing *Vargas v. Sullivan*, 898 F.2d 293, 295-96 (2d Cir. 1990); *Maldonado v. Comm'r of Soc. Sec.*, No. 12-CV-5297, 2014 WL 537564, at *14 (E.D.N.Y. Feb. 10, 2014) ("Not having examined [the plaintiff], [a non-examining medical expert's] opinion cannot constitute substantial evidence and normally may not override a treating source's opinion unless it is supported by sufficient medical evidence in the record.").

Here, Dr. Cruz's opinion conflicted with the weight of the evidence in the record, and as such, the court finds that the ALJ erred in assigning his opinion great weight. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

Specifically, Dr. Cruz opined that plaintiff could lift or carry up to 11-20 pounds continuously,[17] and could carry 21-50 pounds occasionally. (Tr. 748.) As discussed above, these conclusions are wholly unsupported by the bulk of the evidence in the administrative record, including the opinions and progress notes of Dr. Shusterman, Dr. Gearhart, and the

---

[17] In the Questionnaire, claimant's ability to do an activity is defined by the following terms: "occasionally" means one third of the time, "frequently" means one third of the time to two thirds of the time, and "continuously" means two thirds of the time. (*See* Tr. 748.)

plaintiff's hand specialist and neurologist, all of whom, unlike Dr. Cruz, regularly saw and treated the plaintiff. (Tr. 479-87, 600-03, 606, 655-56, 662, 665, 674-75, 677, 683.)

Accordingly, the court finds that the ALJ improperly gave Dr. Shusterman less than controlling weight. On remand, the ALJ is directed to comprehensively weigh the regulatory factors and consider the record in its entirety to determine the weight of Dr. Shusterman's opinion. If the ALJ determines that Dr. Shusterman's opinion is not entitled to controlling weight, the ALJ "must nonetheless articulate a basis for the alternative weight assigned." *Knight v. Comm'r,* 18-CV-2474 (KAM) 2020 WL 3085778 at *7 (E.D.N.Y. Jun. 10, 2020).

### ii.   *Dr. Yuryev-Golger, Treating Psychiatrist*

Plaintiff also asserts that the ALJ should have assigned greater weight to the opinion of Dr. Yuryev-Golger, plaintiff's treating psychiatrist. (Pl. Mem. at 16.) The court agrees with plaintiff that the ALJ erred in failing to adequately discuss why this treating source was afforded "little weight," even though Dr. Yuryev-Golger was a specialist. The court remands for further findings on this additional basis.

"Remand is warranted when the ALJ has not indicated what weight, if any, was assigned based on the fact that the medical opinion was from a specialist." *Barrett v. Berryhill,* 286 F. Supp. 3d 402, 428 (E.D.N.Y. 2018) (citing

*Clark v. Colvin*, 2016 WL 1254024, at *10 (E.D.N.Y. March 31, 2016) (collecting cases)); *Cirelli v. Comm'r,* 1:19-cv-02709 (ER) (SDA) 2020 WL 3405707, at * (S.D.N.Y. May 7, 2020) ("As an initial matter, because Dr. Burcescu was a treating psychiatrist, the ALJ was required to give his opinion as to the nature and severity of Cirelli's impairments controlling weight . . .").

The ALJ merely stated that she gave Dr. Yuryev-Golger's opinions "little weight" because they were "inconsistent with the record" and because her designated treatment was "conservative" and, as such, did not preclude work. (Tr. 28.) Though Dr. Yuryev-Golger's opinion may not necessarily be entitled to controlling weight, the court finds that the ALJ failed to consider the *Burgess* factors, such as the length, frequency, nature or extent of Dr. Yuryev-Golger's relationship with the plaintiff, or provide a rationale supporting the weight given. (Tr. 28; *see Greek*, 802 F.3d at 375; *Burgess*, 537 F.3d at 128; *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 268 (E.D.N.Y. 2010) (citing *Risitano v. Comm'r of Soc. Sec.,* No. 06-CV-2206(FB), 2007 WL 2319793, at *5 (E.D.N.Y. Aug. 9, 2007) (remanding case and directing the ALJ to "identify the evidence [the ALJ] did decide to rely on and thoroughly explain ... the reasons for his decision" if the ALJ did not intend to rely on the opinions of plaintiff's treating physicians);

*Torregrosa v. Barnhart,* No. CV-03-5275(FB), 2004 WL 1905371, at *6 (E.D.N.Y. Aug. 27, 2004) (remanding because "(1) there is a reasonable basis to doubt whether the ALJ applied the correct legal standard in weighing the opinions of [the treating physicians], and (2) the ALJ failed to give good reasons for the weight, or lack thereof, given to those opinions").) Further, the ALJ's failure to take into account the length of the treatment relationship and frequency of the examination, and thereby any "evidence supporting its satisfaction, is of heightened importance" where the claimed impairments include: "depression, bipolar disorder, panic disorder, and generalized anxiety disorder," as is the case here. *Abate,* 2020 WL 2113322, at *4 (internal citations omitted); *see* Tr. 434 (detailing plaintiff's diagnoses). Accordingly, the court remands for the ALJ to comprehensively lay out the reasoning for the weight assigned to Dr. Yuryev-Golger's opinion.

The court also finds that the ALJ did not articulate a reasoned basis for not giving the opinions of plaintiff's treating psychiatrist "controlling weight." *Cervini,* 2020 WL 2615929 at *5. Though the ALJ asserted that Dr. Yuryev-Golger's moderate treatment did not preclude any work functionality, (Tr. 28), the Second Circuit has stated that "the opinion of the treating physician should not be discounted merely because he has recommended a conservative treatment regimen." *See Shaw v.*

40

*Chater,* 221 F.3d 126, 134 (2d Cir. 2000); *see also Barrett v. Berryhill,* 286 F. Supp. 3d 402, 428 (E.D.N.Y. 2018) (holding the treating physician opinion should not have been rejected merely because his choice of treatment was conservative).  Thus, the court does not find persuasive the fact that Dr. Yuryev-Golger did not adopt a more aggressive course of treatment.

The ALJ improperly discounted Dr. Yuryev-Golger's opinion because it was allegedly unsupported by the record. (Tr. 28.)  The court finds the ALJ's determination unavailing because Dr. Yuryev-Golger's progress notes "contain only raw medical evidence from each particular visit," *see Abate,* 2020 WL 2113322, at *5 (E.D.N.Y. May 4, 2020), noting plaintiff's ability to do her own "laundry, drive safely, and independently shop, ambulate, manage finances, operate a telephone, self-feed, and toilet," (Tr. 514, 522, 562) but "do not assess [plaintiff's] ability to engage in competitive work on a regular and continuing basis despite" her impairments.  *Abate,* 2020 WL 2113322, at *5 (quoting *Stein v. Colvin*, No. 15-CV-6753, 2016 WL 7334760, at *4 (W.D.N.Y. Dec. 19, 2016)); *see* 20 C.F.R. § 416.945(c) (the SSA will evaluate the claimant's ability to work on a "regular and continuing basis" when assessing her mental abilities).

The ALJ erred in assigning "great weight" to the opinion of Dr. Thomas, a medical expert who did not personally

examine the plaintiff, and "significant weight" to the opinion
of Dr. Dolan, a consultative examiner, in finding that plaintiff
did not have mental impairments which precluded work-
functioning.  (Tr. 27, 29.)

     As noted above, "In the context of evaluating a mental
disability, 'it is improper to rely on the opinion of a non-
treating, non-examining doctor because the inherent subjectivity
of a psychiatric diagnosis requires the physician rendering the
diagnosis to personally observe the patient.'"  *Maldonado,* 2014
WL 537564, at *15 (quoting *Fofana v. Astrue*, No. 10-CV-0071,
2011 WL 4987649, at *20 (S.D.N.Y. Aug. 9, 2011)).  Thus, "the
conclusions of a physician who merely reviews a medical file and
performs no examination are entitled to little, if any, weight."
*Id.*  In addition, the Second Circuit has cautioned against
reliance on "the findings of consultative physicians after a
single examination" especially where, as here, plaintiff alleges
mental health disability.  *Estrella*, 925 F.3d at 98 (internal
quotation marks and citation omitted). *See also Selian v.
Astrue,* 708 F.3d 409, 419 (2d Cir. 2013).

     As plaintiff correctly notes, in the context of mental
health, it is particularly important to consider the treating
physician's opinion because it provides a comprehensive long-
term history, rather than a "one-time snapshot of a claimant's
status which may not be indicative of her longitudinal mental

health." (Pl. Mem. at 15 (citing *Estrella*, 925 F.3d at 95).)
*See also Noviello v. Comm'r,* 18-CV-5779 (PKC), 2020 WL 353152,
at *7 (E.D.N.Y. Jan. 21, 2020); *Pervaiz v. Comm'r,* 18-CV-1283,
2019 WL 6875232, at *6 (W.D.N.Y. Dec. 17, 2019) (finding that
the ALJ erred by relying exclusively on the opinion of a
physician who examined the plaintiff only once, and a non-
examining consultant). Accordingly, the court finds that the
ALJ committed legal error in relying on Dr. Thomas, a non-
examining medical expert while discounting the opinion of
plaintiff's treating psychiatrist.

Thus, the court finds the ALJ failed to satisfy the
requirements of the treating physician rule with respect to Dr.
Yuryev-Golger's medical opinion evidence and committed legal
error in relying instead on Dr. Thomas's and Dr. Dolan's
opinions. Accordingly, the court orders a remand for the ALJ to
properly evaluate all the medical opinions in accordance with
the SSA regulations. *See* 20 C.F.R. § 404.1527(d)(2).

### 2. *The ALJ's RFC Determination Is Not Supported by Substantial Evidence.*

Plaintiff also asserts that the ALJ's RFC
determination, that plaintiff could perform work at a medium
exertional level, is "farfetched on its face" and "without
evidentiary support." (Pl. Mem. at 14.) Because the court
agrees that the ALJ's RFC determination was not supported by

substantial evidence, the court remands for further findings on this point as well.

The Social Security regulations define "medium work" as "work that requires an individual to lift up to 25 pounds frequently (up to 5 and half hours a day), and to lift up to 50 pounds . . . occasionally (up to 2 and half hours a day)." *Arias v. Saul*, 18-cv-1296 (KAM), 2020 WL 1989277, at *6 (E.D.N.Y. Apr. 25, 2020) (citing 20 C.F.R. §§ 404.1527, 416.967); *see also Trepanier v. Comm'r,* 725 F. App'x 75, 78 (2d Cir. 2020) (citing 20 C.F.R. § 404.1567(c)) (summary order).

In *Arias*, this court held that the ALJ erred in finding that the plaintiff, a woman in her late fifties, who weighed 160 pounds, and was diagnosed with osteoarthritis and tendonitis in her right dominant shoulder, was capable of performing work at the medium exertional level. *Arias*, 2020 WL 1989277, at *8. Similarly, the plaintiff, at the time of hearing, was a 53-year-old woman, who stood five feet and four inches tall, and weighed 155 pounds. (Tr. 42.) As discussed above, considering all the evidence on the record, including plaintiff's shoulder pain,(Tr. 600-03, 606, 674-75), the MRIs detailing her issues with her rotator cuff, (Tr. 353, 355), along with her continued numbness in her hands, (Tr. 481, 593, 604, 655, 665, 700-03), and "severe" pain in her elbow, (Tr. 655-56), it is highly improbable that the plaintiff would be

44

able to lift/ carry up to 50 pounds for 2 hours daily, or even 20 pounds for more than 4 hours daily.

To the extent that plaintiff contends she cannot even perform light work,[18] the court cannot agree.  Plaintiff contends that the treating physician found that she cannot even meet the requirements for sedentary work, which the court finds has no basis in the record.  (*See* Tr. 334, 583(noting that plaintiff could frequently carry 10 pounds)).

For the reasons set forth above, the court finds that the ALJ's RFC determination that plaintiff could perform medium level work was not supported by substantial evidence and remands on this basis as well.

## CONCLUSION

Federal regulations explicitly authorize a court, when reviewing decisions of the SSA, to order further proceedings when appropriate.  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Remand is warranted where "there are gaps in the administrative record or

---

[18] Under the regulations, light work is defined as "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *See* 20 C.F.R. § 404.1567(b).

45

the ALJ has applied an improper legal standard." *Rosa*, 168 F.3d at 82–83 (quoting *Pratts*, 94 F.3d at 39) (internal quotation marks omitted).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  *Pratts*, 94 F.3d at 39.  If the record before the court provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," the court may reverse and remand solely for the calculation and payment of benefits.  *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980); *see also Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

Because the court finds that the ALJ failed to apply the treating physician rule, erred in assigning great and significant weight to one-time and non-examining physicians, and erred in arriving at her RFC determination, which was not supported by substantial evidence, the court GRANTS plaintiff's motion, DENIES defendant's cross-motion, and REMANDS this case for further proceedings consistent with this decision.  The Clerk of Court is respectfully directed to enter judgment in favor of plaintiff and close this case.

**SO ORDERED.**

Dated:    July 13, 2020
          Brooklyn, New York

                              _____/s/_____
                              Hon. Kiyo A. Matsumoto
                              United States District Judge